UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v-<br><br>CHARLES STARKS,<br>                          Defendant. | Case No. 1:24-cr-00126 (JLR)<br><br>**OPINION AND ORDER** |

JENNIFER L. ROCHON, United States District Judge:

On February 2, 2024, Defendant Charles Starks ("Starks") was charged in a criminal complaint with one count of solicitation and receipt of a bribe and one count of extortion under color of official right. Dkt. 1 (the "Complaint" or "Compl."). On March 5, 2024, a grand jury sitting in this District charged Starks with one count of solicitation and receipt of a bribe by an organization receiving federal funds, in violation of 18 U.S.C. § 666(a)(1)(B) ("Count One"); and one count of extortion under color of official right, in violation of 18 U.S.C. § 1951 ("Count Two"). Dkt. 8 (the "Indictment" or "Ind."). Now before this Court is Stark's motion to dismiss Count One of the Indictment, or, in the alternative, for a bill of particulars to clarify the conduct referenced in the Indictment. Dkt. 17.

For the reasons set forth below, Starks' motions are DENIED.

## BACKGROUND

This matter arises from an investigation into widespread charges of bribery and extortion against seventy current and former employees of the New York City Housing Authority ("NYCHA"), the largest public housing authority in the country. Dkt. 6 at 1. According to the Complaint, beginning in late October 2019, Starks worked as a superintendent at the Mill Brook Houses, a NYCHA development located in the Bronx. Compl. ¶ 7(a). The Government alleges that there were two contractors who made payments

1

to Starks in exchange for no-bid contracts at Mill Brooks Houses. Compl. ¶¶ 8-9. Specifically, "in or about March 2021 through in or about June 2022," the first contactor paid Starks approximately $1,000 in cash for each of approximately five no-bid contracts. *Id*. at 8(b). The Complaint posits that the contractor understood, based on the contractor's interactions with Starks and other NYCHA employees, that if they "did not make payments to STARKS, [they] would not be paid for work [they] had completed or would not receive future NYCHA contracting work." *Id.* ¶ 8(c).

The Government further alleges that the second contractor likewise paid $1,000 in cash for each of approximately two no-bid contracts at Mill Brooks Houses. Compl. ¶ 9(b). According to the Complaint, this contractor likewise understood that, if they did not make these payments, they "would not be paid for work [they] had completed or would not receive future NYCHA contracting work." Compl. ¶ 9(c).

On March 5, 2024, the Grand Jury returned an Indictment charging Starks with soliciting and receiving a bribe while acting as an agent of an organization receiving federal funds, in violation of Section 666(a)(1)(B) of Title 18 ("Section 666(a)(1)(B)")(Count One), and extortion under color of official right, in violation of Section 1951 of Title 18 ("Section 1951") (Count Two). *See generally* Ind. As alleged in Count One of the Indictment, from at least in or about 2015 though at least in or about 2022, Starks "solicited and accepted a total of at least approximately $18,500 in bribes in exchange for arranging for certain contractors to receive no-bid contracts from NYCHA worth a total of at least approximately $130,245." Ind. ¶ 1.

On September 16, 2024, Starks filed the present motion. Dkt. 17 ("Def Br."). Shortly thereafter, on September 27, 2024, the Government provided defense counsel with a

disclosure letter providing additional details as to the approximate dates and locations of various bribe payments, as well as the number of bribes received. Dkt. 18-1 at 1. The Government underscored that its letter "should not be construed as a formal bill of particulars," and that additional information would be made available when the Government produced witness statements pursuant to 18 U.S.C. § 3500 ("Section 3500") "in advance of trial." *Id.* at 2. On September 30, 2024, the Government filed its opposition to Starks' motion. Dkt. 18 ("Gov't Opp."). On October 6, 2024, Starks filed a reply brief. Dkt. 19 ("Reply Br.").

## ARGUMENT

Starks moves for dismissal of Count One of the Indictment or, in the alternative, for a Bill of Particulars providing greater detail as to the conduct alleged in the Indictment. The Court first considers Starks' motion to dismiss and next considers his alternative motion for a bill of particulars.

### I. Starks' Motion to Dismiss

"Under Federal Rule of Criminal Procedure 12(b), a court may dismiss an indictment for failure to state an offense." *United States v. Pankey*, No. 24-cr-00122 (MKV), 2024 WL 3522138, at *3 (S.D.N.Y. July 23, 2024); Fed. R. Crim. P. 12(b)(3)(B)(v). "A criminal defendant is entitled to an indictment that states the essential elements of the charges against him." *United States v. Pirro*, 212 F.3d 86, 91 (2d Cir. 2000). However, "[a] defendant faces a high standard in seeking to dismiss an indictment, because an indictment need provide the defendant only a plain, concise, and definite written statement of the essential facts constituting the offense charged." *United States v. Smith*, 985 F. Supp. 2d 547, 561 (S.D.N.Y. 2014), *aff'd sub nom. United States v. Halloran*, 664 F. App'x 23 (2d Cir. 2016), *cert. denied*

3

*sub nom. Tabone v. United States*, 580 U.S. 1201 (2017); *see* Fed. R. Crim. P. 7(c).  Indeed, the "dismissal of an indictment is an extraordinary remedy reserved only for extremely limited circumstances implicating fundamental rights."  *United States v. Skelos*, No. 15-cr-00317 (MWV), 2015 WL 6159326, at *1 (S.D.N.Y. Oct. 20, 2015) (citation and quotation marks omitted).  The Second Circuit has described dismissal of an indictment as the "most drastic remedy available" and an "extreme sanction," *United States v. Fields*, 592 F.2d 638, 647 (2d Cir. 1978), that should be reserved for "very limited and extreme circumstances."  *United States v. Broward*, 594 F.2d 345, 351 (2d Cir. 1979).

"The two requirements of an indictment are that it 'contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend' and that it 'enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'"  *United States v. Heicklen*, 858 F. Supp. 2d 256, 262 (S.D.N.Y. 2012) (quoting *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007)).  "[T]he Second Circuit has consistently upheld indictments that do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime."  *Smith*, 985 F. Supp. 2d at 561 (brackets omitted) (quoting *United States v. Bout*, 731 F.3d 233, 240 (2d Cir. 2013)); *accord United States v. LaSpina*, 299 F.3d 165, 177 (2d Cir. 2002) (quotations omitted).  "Indictments do not have to specify evidence or details of how the offense was committed."  *United States v. Shea*, No. 20-cr-00412 (AT), 2023 WL 4551635, at *3 (S.D.N.Y. July 14, 2023), *aff'd*, No. 23--6482-cr, 2024 WL 2130874 (2d Cir. May 13, 2024) (summary order) (citation and quotation marks omitted).

The Indictment against Starks easily clears this low threshold.  18 U.S.C. § 666 ("Section 666") makes it a crime for an agent of a State or local government to "corruptly solicit[] or demand[] for the benefit of any person, or accept[] or agree[] to accept, anything of

4

value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving any thing of value of $5,000 or more." 18 U.S.C. § 666(a)(1)(B). Count One "tracks the statutory language of § 666 and informs [Starks] of the approximate time period and location of the offense." *United States v. Chambers*, No. 17-cr-00396 (WHP), 2018 WL 1726239, at *1 (S.D.N.Y. Apr. 9, 2018). That is all that is required. *See id.*; *see also United States v. Alfonso*, 143 F. 3d 772, 776 (2d Cir. 1998) (holding that indictment "meets these basic pleading requirements by accurately stating the elements of the offense charged and the approximate time and place of the [charged crime]"); *Heicklen*, 858 F. Supp. 2d at 263 (the indictment is "stated with sufficient specificity" where it "identifies the relevant time period, states the specific location of the alleged crime, and provides a general description of [the defendant's] activities"); *United States v. Diallo*, No. 09-cr-00858 (SAS), 2009 WL 4277163, at *2 (S.D.N.Y. Nov. 24, 2009) (indictment that "lack[ed] specifics" was sufficient because "an indictment need do little more than to track the language of the statute charged and state the time and place in approximate terms of the alleged crime" (citation omitted)). The Indictment returned against Sparks specifies the timeframe in which the alleged bribery occurred ("in or about 2015 through at least in or about 2022"); the amount in bribes Starks received ("at least approximately $18,500"); and the subject of the bribes ("no-bid contracts from NYCHA worth a total of at least approximately $130,245"). Ind. ¶ 1. Taken together, this information is more than adequate to put Starks on notice of the conduct with which he is charged.

Starks insist, however, that Count One of the Indictment cannot survive the Supreme Court's ruling in *Snyder v. United States*, 144 S. Ct. 1947 (2024). Def. Br. at 5-7. In *Snyder*, the Supreme Court held that Section 666 applies only to the solicitation and acceptance of

5

bribes, not gratuities. 144 S. Ct. at 1951. On that ground, the Supreme Court overturned the conviction of the former mayor of Portage, Indiana, who had been charged with bribery for taking a $13,000 check from a local truck company to whom the City had awarded contracts totaling over $1 million. *Id*. at 1954. According to Starks, here, as in *Snyder*, the Government is in effect asserting a gratuities theory, premised on Starks "awarding a no-bid contract to a contractor and *then* asking that contractor for a gift." *See* Def. Br. at 7 (emphasis added). Starks characterizes the *Snyder* decision as delineating between gratuities issued *after* an official act (which fall outside the scope of Section 666), and bribes solicited or made *prior to* an official act (which are prohibited by Section 666). Def Br. at 2. Starks argues that the Indictment asserts the former and therefore is not enforceable under Section 666 post-*Snyder*.

Starks, however, misconstrues both *Snyder* and the plain language of the Indictment returned against him. In *Snyder*, the Court held that the characterization of a given payment as a "gratuity" versus a "bribe" turns not on the timing of the payment, but on whether the official has a "corrupt state of mind and accept[s] (or agree[s] to accept) the payment intending to be influenced in an official act." *Id*. at 1955. The key inquiry is therefore "the timing of the agreement" between the parties, "not the timing of the payment." *Id*. at 1959. The *Snyder* Court held that a "reward given after the act," but "pursuant to an agreement beforehand," would still constitute a bribe within the meaning of Section 666. *Id.* at 1959. Indeed, the Court found that Section 666 incorporates the term "rewarded" in addition to "influenced" to precisely capture those arrangements where payment is received only *after* the official act has been rendered, but pursuant to an existing agreement. *Id.* Therefore, to the extent that Starks argues that the Indictment is deficient because it suggests that contractors issued payments to Starks only after they had already been awarded no-bid contracts, that argument misses the mark.

6

Moreover, the Indictment language is clear that the Government's theory of the case is premised on Stark's illegal receipt of *bribes* – not gratuities – and in arguing otherwise, Starks seeks to introduce an ambiguity on the face of the Indictment where none exists. Starks contends that it is not readily apparent whether the Government is alleging a gratuities theory or a bribes theory. *See* Def. Br. at 4 ("The Indictment…is equally susceptible to the interpretation that on certain occasions, after awarding a no-bid contract, Starks solicited or accepted a gift from the contractor who was awarded the work"); Reply Br. at 2 ("The fullest explication to date of the Government's theory of the case against Starks . . . casts serious doubt as to whether the Government is proceeding on a bribery theory or a gratuities theory"). That assertion is readily refuted by reference to the Indictment, which explicitly characterizes the payments exchanged as "bribes," not gratuities. Ind. ¶ 1. In this procedural posture, the Court takes the "allegations of the indictment as true," and does not consider whether the Indictment is "supported by adequate or competent evidence." *Skelos*, 2015 WL 6159326, at *2 (citation omitted). Moreover, the "to wit" clause alleges that Starks "solicited and accepted" $18,500 in bribes "*in exchange for* arranging for certain contractors to receive no-bid contracts form NYCHA worth a total of at least approximately $130,245." Ind. ¶ 1 (emphasis added). That language is entirely consistent with *a quid pro quo* agreement, which implies a bribe and not a gratuity. *See, e.g.*, *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 404-05 (1999) ("[F]or bribery there must be a *quid pro quo*—a specific intent to give or receive something of value in exchange for an official act.")). Indeed, the Second Circuit has held that the phrase "in exchange for" sufficiently alleges a *quid pro quo* agreement and therefore sustains a charge of bribery under Section 666. *United States v. Benjamin*, 95 F.4th 60, 74 (2d Cir. 2024). In so holding, the Second Circuit underscored that

7

"in exchange for" connotes an "unambiguous agreement to exchange an official public act . . . *for* financial contributions." *Id*. (emphasis added).[1]

Finally, Starks turns to the Complaint, which he asserts contains the "fullest explication to date of the Government's theory of the case" and "casts serious doubt as to whether the Government is proceeding on a bribery theory or gratuities theory." Reply Br. at 2. The Court disagrees. The Complaint reiterates the basic thrust of the Indictment's "to wit" clause, namely, that at least in or about July 2020 through at least in or about June 2022, "STARKS solicited and accepted a total of at least approximately $7,000 in bribes *in exchange for* arranging for certain contractors to receive no-bid contracts from NYCHA worth a total of at least approximately $35,000." Compl. ¶ 1 (emphasis added). Therefore, the Complaint, like the Indictment, makes clear that the Government is alleging a *quid pro quo* exchange. Starks points to subsequent language in the Complaint which asserts that contractors made payments to Starks with the understanding that, if they neglected to do so, they would "not be paid for the work [they] had completed or would not receive future NYCHA contracting work." Compl. ¶¶ 8(c), 9(c). This language, Starks insists, "suggests . . . that the contractor had already been selected for no-bid work and even performed such work before developing an understanding that they would not be compensated unless they paid Sparks." Reply Br. at 2. The Court rejects Starks' characterization and finds no inconsistency between the Complaint's articulation of the charged conduct and the Government's bribery

---

[1] Starks contends that *Benjamin* is inapposite because it pre-dates *Snyder* and because it "did not concern the question of whether a payment was a gratuity or whether it was a bribe." Reply Br. at 1. *Snyder*, however, in no way disturbs the finding in *Benjamin* that the phrase "in exchange for" sufficiently conveys an "agreement to exchange an official public act . . . for financial contributions." *Benjamin*, 95 F.4th at 73-74. That is exactly what is conveyed in the Indictment – Starks entered into agreements to "arrang[e] for certain contractors to receive no-bid contracts" in exchange for "at least approximately $18,500 in bribes." Ind. ¶ 1.

theory. The cited language just as readily suggests a prior agreement between the parties whereby NYCHA's performance under the no-bid contracts would be contingent on the contractors paying Starks a "reward." *See, e.g., Snyder*, 144 S. Ct. at 1959 (a "reward given after the act pursuant to an agreement beforehand" is a bribe). Indeed, that is the reading that is compelled when the Complaint's language is read in conjunction with the "to wit" clause.

For these reasons, the Court does not find that Stark's motion satisfies the "high standard" for dismissal of an indictment, *Smith*, 985 F. Supp. 2d at 561, and denies the motion.

## II. Starks' Request for a Bill of Particulars

Starks asks in the alternative for a bill of particulars "specifying the timing and circumstances of each of the payments he is accused of soliciting or receiving from contractors." Def. Br. at 2. Starks seeks "at a minimum the statements of contractor-witnesses whom the Government is relying on for its claims," asserting that this information is necessary to "provide notice to Starks of the nature of the allegations against him, especially with respect to whether his alleged solicitation and receipt of payments came before or after he performed the official act of awarding a no-bid contract." *Id.*

Even where dismissal of an indictment is not appropriate, pursuant to Federal Rule of Criminal Procedure 7(f), a defendant may request a bill of particulars from the Government. However, "[a] bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990), *abrogated on other grounds by United States v. Marcus*, 628 F.3d 36 (2d Cir. 2010). "Whether to grant a bill of particulars rests within the sound discretion of the district court." *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984). "Acquisition of evidentiary detail is not the function of the

9

bill of particulars." *Torres*, 901 F.2d at 234 (citation omitted). Therefore, "a defendant is not entitled to disclosure of the manner in which the [G]overnment will attempt to prove the charge, the precise manner in which the [G]overnment will allege the defendant committed the crimes charged, or a preview of the [G]overnment's evidence or legal theories." *Skelos*, 2015 WL 6159326, at *13; *see United States v. Guerrerio*, 670 F. Supp. 1215, 1224-25 (S.D.N.Y. 1987) ("A bill of particulars . . . is not a discovery tool and is not intended to allow defendants a preview of the evidence or the theory of the government's case").

"The important question is whether the information sought is necessary, not whether it is helpful." *United States v. Horge*, No. 19-cr-00096 (LTS), 2020 WL 6273932, at *3 (S.D.N.Y. Oct. 26, 2020) (citation omitted); *accord United States v. Trippe*, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001). "In deciding whether the bill of particulars is needed, the court must determine whether the information sought has been provided elsewhere, such as in other items provided by discovery," or in other places. *United States v. Payden*, 613 F. Supp. 800, 818 (S.D.N.Y. 1985). "Where the defendant has the necessary information from other sources, including discovery materials, the government will not be compelled to provide particulars." *U.S. v. Ahmad*, 992 F. Supp. 682, 684 (S.D.N.Y. 1998).

The Court concludes that a bill of particulars is not warranted here. The Indictment and Complaint sufficiently advise Starks of the nature of the charges against him in that they describe the acts that he committed, the nature of the crime of which he is accused, and the crime that is charged. *See, e.g.*, *United States v. Block*, No. 16-cr-00595 (JPO), 2017 WL 1608905, at *6 (S.D.N.Y. Apr. 28, 2017) (holding that indictment sufficiently advised defendant of the charges against him where it described "the acts he allegedly committed, the nature of the [crime] of which he is accused, and it explains (in language closely tracking that of the relevant statutes) the crimes alleged").

In addition to the Indictment and Complaint, the Government has provided substantial, additional information as to the charged conduct through pre-trial discovery and disclosures. The Government represents that it has produced records of the no-bid contracts for which Starks allegedly solicited and accepted bribes. Gov't Opp. at 9. Moreover, on September 27, 2024, after receiving the instant motion, the Government sent defense counsel a disclosure letter with additional information regarding the dates and locations of the alleged bribes. Dkt. 18-1. Furthermore, the Government has stated that it will provide Starks with Section 3500 materials sufficiently in advance of trial to prevent any prejudicial surprise, along with a list of trial exhibits and a witness list. Gov't Opp. at 10.

Starks fixates on the absence of information regarding the "timing of the alleged solicitation and receipt of payments compared with the timing of when no-bid contracts were awarded." Def. Reply at 3. As the Court has explained, under *Snyder*, the timing of the payments for the award of no-bid contracts does not answer the question of whether a Section 666 violation occurred. *Supra* at pp. 6-8. In terms of the solicitation, the Indictment charges that the payments were "in exchange for" the no-bid contracts, which would support a Section 666 violation. Ind. ¶ 1. "In light of the Government's prior productions and disclosures, the additional 'wheres, whens, and with whoms'" sought by Starks "are of the type 'routinely denied' in the Second Circuit." *Horge*, 2020 WL 6273932, at *3 (citing *United States v. Ma*, No. 03-CR-734 (DAB), 2006 WL 708559, at *14 (S.D.N.Y. Mar. 21, 2006)); *see also United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004) (district court did not abuse its discretion in denying defendant a bill of particulars as to the "exact time and place of each alleged act associated with each offense identified in the indictment"). The Indictment is thus sufficiently clear that the Government is alleging the payment of bribes "in exchange for" no-bid contacts, Ind. ¶ 1, and Starks can prepare his defense accordingly. Under the articulation in the

Indictment, the contractors necessarily agreed to pay Starks in exchange for the issuance of the no-bid contracts, even if the payments themselves followed later. To the extent that Starks seeks *specific* dates and times on which agreement between the parties was reached or payments were exchanged, such information might "aid the defendant" in his preparation but is not "necessary" for his defense. *Trippe*, 171 F. Supp. 2d at 240 ("[T]he proper test in deciding whether a bill of particulars should be required of the Government is whether the bill of particulars is necessary for the defense, not whether it would aid the defendant in his preparation."); *see United States v. Shteyman*, No. 10-cr-00347 (SJ), 2011 WL 2006291, at *4 (E.D.N.Y. May 23, 2011) ("[T]his Circuit consistently sustains wide latitude with date ranges within the indictment where the indictment, as is the case here, tracks the language of the statutes defendants are charged with violating.").

In any event, as mentioned earlier, the Government has represented that it will turn over contractors' witness statements, including details about the timing of those payments, "sufficiently in advance of trial pursuant to the Jencks Act" and that "[t]here will therefore be no surprise at trial as to this information." Gov't Opp. at 10. The Court finds no need for a bill of particulars given the Government's commitment to producing the requested information in advance of trial. *See, e.g.*, *Chambers*, 2018 WL 1726239, at *2 (rejecting motion for bill of particulars where the Court "will require production of Jencks Act material in advance of trial to apprise the defendant of the essential facts."); *Ma*, 2006 WL 708559, at *15 (denying full motion for bill of particulars in light of discovery material already provided and Government's assurance that it would provide defendants with Section 3500 material "sufficiently in advance of trial"). For this reason, the Court rejects Starks' request, at this juncture, for "statements that contractors have made to the Government about the circumstances of alleged payments that Starks solicited or received from them." Def. Br. at 8.

12

The Court agrees with the Government that disclosure of these statements at this stage would constitute an early disclosure of victim-witness statements that is not warranted. *See, e.g.*, *United States v. Percevault*, 490 F.2d 126, 132 (2d Cir. 1974) (holding that Section 3500 prohibits a district court judge from compelling pretrial disclosure of government witnesses made over the government's objection); *United States v. Coppa*, 267 F.3d 132, 145 (2d Cir. 2001) ("Jencks Act prohibits a District Court from ordering the pretrial disclosure of witness statements").[2]

Therefore, based on the Complaint, the Indictment, and the totality of the pretrial disclosures to date, the Court finds that Starks has been put on sufficient notice of the charges against him, and therefore denies Starks' alternative Motion for a bill of particulars.

## CONCLUSION

For the reasons set forth above, Starks' motion to dismiss Count One of the Indictment, or in the alternative, for a bill of particulars, is DENIED. The Court of Clerk is respectfully requested to close the Motion at Dkt. 17.

Dated: October 18, 2024
       New York, New York

                              SO ORDERED.

*Jennifer Rochon*
JENNIFER L. ROCHON
United States District Judge

---

[2] The Government separately argues that Starks did not comply with the procedural requirement to confer with the Government prior to the filing of his motion for a bill of particulars, as set forth in Local Criminal Rule 16.1, and that his failure to do so necessitates dismissal. Gov't Opp. at 7. The Court rejects Starks' motion on the merits and therefore need not reach the question of whether Starks should have followed this procedural step in the context of seeking alternative relief to his motion to dismiss.